IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| LATOSHA NEAL, | : | CIVIL ACTION NO. |
| | : | 1:15-CV-0210-TWT-JSA |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | **FINAL REPORT AND** |
| T-MOBILE USA, INC., | : | **RECOMMENDATION ON A** |
| | : | **MOTION FOR SUMMARY** |
| Defendant. | : | **JUDGMENT** |

Plaintiff Latosha Neal filed the above-styled civil action on January 22, 2015. Plaintiff alleges that she was employed by Defendant T-Mobile USA, Inc. ("Defendant" or "T-Mobile") from 2002 to January of 2013, when her employment was terminated. She alleges that she has a disability and that T-Mobile refused to make reasonable accommodations for her disability, discriminated against her on the basis of her disability, and retaliated against her for requesting a reasonable accommodation for her disability, in violation of Title I of the Americans with Disabilities Act ("ADA"), as amended by the ADA Amendments Act of 2008, 42 U.S.C. §§ 12111, *et seq.* Plaintiff also claims that T-Mobile interfered with her exercise of her rights under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601–2654, and retaliated against her for taking FMLA leave.

The action is before the Court on the Defendant's Motion for Summary Judgment [37]. For the reasons discussed below, the undersigned **RECOMMENDS**

that Defendant's Motion for Summary Judgment [37] be **GRANTED**, and that judgment be entered in favor of Defendant on all of Plaintiff's claims.

## I.    FACTS

Unless otherwise indicated, the Court draws the following facts from "Defendant's Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment" [37-1] ("Def. SMF") or "Plaintiff's Statement of Disputed Material Facts as to Which There Exist Genuine Issues to Be Tried" [47] ("Pl. SMF"). The Court also draws some facts from "Plaintiff's Response to Defendant's Statement of Undisputed Material Facts" [48] ("Pl. Resp. SMF") and "Defendant's Response to Plaintiff's Statement of Allegedly Disputed Material Facts" [50] ("Def. Resp. SMF").

For those facts submitted by either party that are supported by citations to record evidence, and for which the opposing party has not specifically disputed and refuted with citations to record evidence showing a genuine dispute of fact, the Court deems those facts admitted, pursuant to Local Rule 56.1B. *See* LR 56.1(B)(2)(a)(2), NDGa ("This Court will deem each of the movant's facts as admitted unless the respondent: (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's

citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1 B.(1).").

The Court has excluded assertions of fact by either party that are immaterial or presented as arguments or legal conclusions, and has excluded assertions of fact unsupported by a citation to evidence in the record or asserted only in the party's brief and not the statement of facts. *See* LR 56.1B, NDGa ("The court will not consider any fact: (a) not supported by a citation to evidence . . . or (d) set out only in the brief and not in the movant's [or respondent's] statement of undisputed facts."). The Court has also viewed all evidence and factual inferences in the light most favorable to Plaintiff, as required on a defendant's motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *McCabe v. Sharrett*, 12 F.3d 1558, 1560 (11th Cir. 1994); *Reynolds v. Bridgestone/Firestone, Inc.*, 989 F.2d 465, 469 (11th Cir. 1993).

The Court notes that both parties have objected to some of the opposing party's proffered facts on the ground that an asserted fact is not relevant or material to the claims and defenses presented in this case. The Court nevertheless includes some of those facts because they provide background information that is helpful to explain the context of the parties' asserted facts and contentions. The parties also attempt to dispute some of the opposing party's proffered facts, but the majority of these disputes

are over minor and immaterial issues. Indeed, as explained below, the resolution of this motion ultimately turns on a relatively few number of truly disputed facts. Accordingly, the Court will not rule on each and every objection or dispute presented by the parties, and will discuss those objections and disputes in the analysis section only when necessary to do so regarding a genuine dispute of a material issue of fact. Thus, unless stated otherwise, the Court assumes the facts as stated by Plaintiff.

<u>Defendant's Statement of Facts</u>

Plaintiff Latsosha Neal is a former employee of T-Mobile. Def. SMF at ¶ 1. Plaintiff was employed by T-Mobile as a Retail Sales Leader, working at T-Mobile's retail store on Mount Zion Road in Morrow, GA. Def. SMF at ¶ 2. In October of 2012, Plaintiff reported to Store Manager Jennifer Jackson, who reported to District Manager Carl Graden. Def. SMF at ¶ 3. The Human Resources employee over Plaintiff's region in October of 2012 was Georgia Vahoua. Def. SMF at ¶ 4.

In October of 2012, there was an armed robbery at the Mt. Zion Store where Plaintiff worked. Def. SMF at ¶ 5. Plaintiff was not injured, but informed T-Mobile that she was "tensed" and "shaken" because of the robbery and she was encouraged to take time off. Def. SMF at ¶ 6. After the robbery at the Mt. Zion store, Plaintiff applied for FMLA leave. Def. SMF at ¶ 7. As part of her application, which was reviewed only by certain limited T-Mobile employees in its Leave of Absence

4

Department in Bellevue, Washington and not by any managers in Georgia, Plaintiff informed T-Mobile that she was receiving counseling from a church-based counselor named Terrence Borsare. Def. SMF at ¶ 8. Plaintiff submitted a certification as to her condition from Borsare, which stated that Plaintiff was incapacitated as a result of post-traumatic stress disorder ("PTSD") arising from the robbery. Def. SMF at ¶ 9. Plaintiff was granted FMLA leave commencing on October 9, 2012. Def. SMF at ¶ 10.

While Borsare stated that Plaintiff was incapacitated from "all" of her job functions, unbeknownst to T-Mobile, during the time she was on leave, Plaintiff engaged in "standard life activities" without assistance. Def. SMF at ¶ 11. During her leave, Plaintiff traveled to her gym three or more days a week for spin classes and sauna sessions, did her own grocery shopping, cooked at home and ate out at restaurants, cleaned her home, and paid her bills. Def. SMF at ¶¶ 12-17. During her leave, Plaintiff drove to Concord, Georgia to visit her family approximately twice a week, and would do so at day and at night. Def. SMF at ¶ 18. Plaintiff also spent "a lot of time in the car driving around," rode MARTA, and went to the park, library, church, mall, and professional football games. Def. SMF at ¶¶ 19-24. Plaintiff also flew on an airplane to North Carolina to visit her sister and attended a professional football game with her. Def. SMF at ¶ 25. While Plaintiff does not dispute that she

engaged in these activities, she contends that she is a single woman who lived alone and was required to care for herself, and further, that she engaged in "self-care activities" necessary for treatment of her PTSD, and that her recovery benefitted from these activities. Pl. Resp. SMF at ¶¶ 11-25.

According to Defendant, Plaintiff and Borsare both admitted that, during Plaintiff's leave period, there was no activity whatsoever in which Plaintiff was substantially limited from engaging–except going to the single T-Mobile store on Mount Zion Road where the robbery occurred. Def. SMF at ¶ 26; Pl. Dep. at 228-29; Borsare Dep. at 39. Plaintiff disputes that, and contends that she was "very solitary" during her FMLA leave and saw her friends only one time. Pl. Resp. SMF at ¶ 26; Pl. Dep. at 115, 120. While Plaintiff had symptoms of "crying spell, nightmares, [and being] anxious" immediately after the robbery, these symptoms quickly resolved and by November 13, 2012, just three weeks after Borsare saw her for the first time, Borsare reported that these symptoms were "beginning to lessen." Def. SMF at ¶ 27; Borsare Dep. at 44, Ex. 3 at 228. At the next session that Borsare had with Plaintiff, on November 27, 2012, both Borsare and Plaintiff reported that she was out in public "without symptoms of distress." Def. SMF at ¶ 28; Pl. Dep. at 229-30. When Borsare saw Plaintiff on January 9, 2013, Borsare found that, "for the most part," her symptoms of PTSD were gone, and that Plaintiff was "functioning well with family

and friends." Def. SMF at ¶ 29; Borsare Dep. at 61. Thereafter, Plaintiff had "[n]o symptoms of PTSD." Def. SMF at ¶ 30; Pl. Dep. at 232; Borsare Dep. at 52, Ex. 3 at 216-18.

Defendant contends that Plaintiff's 12-week FMLA leave from T-Mobile expired on January 1, 2013 and Plaintiff was scheduled to return to work on that date. Def. SMF at ¶ 31; Pl. Dep. at 99, Ex. 15. Plaintiff disputes this and contends that the Human Resources Department at T-Mobile extended her leave through January 11, 2013. Pl. Resp. SMF at ¶ 31; Pl. Dep. Ex. 19. Plaintiff did not return to her position at the end of her 12-week FMLA leave and testified that she could not do so. Def. SMF at ¶ 32. While Plaintiff does not dispute that she did not return to work on January 1, 2013, she contends that "she was requesting an accommodation and in the process of negotiating that accommodation." Pl. Resp. SMF at ¶ 32; Pl. Dep. at 100, 140.

On or around January 2, 2013, Plaintiff asked T-Mobile to provide her a workplace accommodation by transferring her to a new position at a different location. Def. SMF at ¶ 33; Pl. Dep., Ex. 18. In her workplace accommodation request, Plaintiff stated that she "preferred" a mall location. Def. SMF at ¶ 34; Pl. Dep., Ex. 18 (Plaintiff stated that "a mall location is preferred with high security"). On January 9, 2013, Plaintiff modified her request by sending an email stating that she was now

ready to return either to a "new location" or to her original store. Def. SMF at ¶ 35.

Plaintiff contends that she was willing to return to the Mt. Zion location, but only

"temporarily while her accommodation was being negotiated." Pl. Resp. SMF at ¶ 35;

Pl. Dep., Ex. 19. Plaintiff wrote in her January 9, 2013 email:

> I spoke with the counselor, Terry [Borsare], that I am seeing as far as
> releasing me to return to work today (January 9). We are in agreement:
> If possible a new position within the company, a new location in a highly
> patrolled area. . . or returning to the Mt. Zion location temporarily . . . .

Def. SMF at ¶ 36; Pl. Dep. at 138- 144-45, Ex. 19.

Defendant contends that, at all times after January 9, 2013, Plaintiff was able

to work in her position at the Mt. Zion store. Def. SMF at ¶ 37; Pl. Dep. at 146.

Plaintiff admits that she was able to work at the Mt. Zion store, but only temporarily

with the goal of transferring to a mall location. Pl. Resp. SMF at ¶ 37; Pl. Dep. at 145-

46. While Plaintiff stated in her January 9, 2013 email that she wanted to return to the

Mt. Zion job "temporarily," she acknowledged that there was no medical reason that

she could not return permanently to that store location. Def. SMF at ¶ 38; Pl. Dep. at

159.

In response to her email dated January 9, 2013, Plaintiff's managers scheduled

a telephone call with her on January 11, 2013, to discuss her return to work. Def. SMF

at ¶ 39. On the January 11, 2013 phone call, Plaintiff was offered the option to return

to the Mt. Zion store, or to take another available part-time position within District

Manager Graden's area. Def. SMF at ¶ 40. Plaintiff was told that, if she chose to return to Mt. Zion, T-Mobile would post a security officer at the store, shorten the store hours, and ensure that there were always at least three personnel working in the store. Def. SMF at ¶ 41. Plaintiff informed her managers that she wished to return to her Mt. Zion position, and that she would do so by the following Monday, January 14, 2013. Def. SMF at ¶ 42. Shortly after the January 11, 2013 phone call, Plaintiff texted her Store Manager, Jennifer Jackson, and told her "Thanks for making that painless" and Jackson responded "Anytime. I'm just excited you are returning." Def. SMF at ¶ 43.

After the January 11, 2013 phone call, T-Mobile Human Resources representative Georgia Vahoua began taking steps in preparation for Plaintiff's January 14 return. Def. SMF at ¶ 44. Defendant contends that Plaintiff needed to obtain a return-to-work authorization and release (also known as a fitness-for-duty certificate) from her counselor Borsare, and bring it to T-Mobile when she returned to work. Def. SMF at ¶ 45; Pl. Dep., Ex. 5, 14, 15, 20, 23. Plaintiff disputes this, and contends that Jackson told her to fax the release form to the "Loa dept." Pl. Resp. SMF at ¶ 45; Pl. Dep., at 165-66, 173-74, Ex. 21, Bates No. LN000499. She further contends that faxing is the "normal process by which an employee provides his or her

release to return to work at T-Mobile." Pl. Resp. SMF at ¶¶ 45-46; Valhoua Dep. at 49.

According to Defendant, Plaintiff was expressly informed in writing that she was "required to present a return to work authorization release" from Borsare when she returned to work; she was expressly instructed to not only fax the release to T-Mobile but also to "bring a physical copy to work on your first day back." Def. SMF at ¶ 47; Pl. Dep., Ex. 15 (letter to Plaintiff from Joanna Benson, Leave of Absence Administrator, dated December 21, 2012, stating that, upon her return to work after her FMLA leave, Plaintiff must present her release form three days prior to returning to work, and that she must "**fax the release to your LOA administrator**" and "**bring a physical copy to work on your first day back**") (emphasis in original). While Plaintiff does not dispute receiving that letter, she contends that Jackson told her to "fax to Loa dept." Pl. Resp. SMF at ¶ 47; Pl. Dep., at 165-66, 173-74, Ex. 21, Bates No. LN000499.

It is undisputed that Plaintiff "understood it was important to get that release promptly and get it back to T-Mobile." Def. SMF at ¶ 48. Plaintiff informed T-Mobile in writing that she would "obtain necessary return to work documents before her return" on January 14, 2013. Def. SMF at ¶ 49. Despite her representations that she would take the steps necessary to return to work by January 14, 2013, including

obtaining a return-to-work authorization, Plaintiff did not obtain the authorization and release before January 14, 2013. Def. SMF at ¶ 50; Pl. Dep. at 146-47. According to the Defendant, Plaintiff did not even ask Borsare to submit a return-to-work release until January 24, 2013, which was approximately two weeks after representing to T-Mobile that she would do so, and ten days after her agreed-to return-to-work deadline. Def. SMF at ¶ 51; Pl. Dep. at 146-47; Borsare Dep. at 68. Although Plaintiff admits that she did not obtain the release form by January 14, 2013, she disputes that she did not ask Borsare for the release until January 24, 2013, and contends that she contacted him on January 14, 2013, but learned that he was out of the office because he was sick. Pl. Resp. SMF at ¶ 51; Pl. Dep. at 174-75.

Defendant contends that, on January 23, 2013, Plaintiff told Borsare that she did not want him to issue a return to work authorization because she "[d]ecided to sleep on it for 24 hours" and then to call Borsare with a "formal decision." Def. SMF at ¶ 53; Borsare Dep. at 68, Ex. 3; Pl. Dep. at 188-89. Plaintiff disputes this, and contends that she made the decision to return to work at the Mt. Zion location on January 9, 2013, and she attempted to obtain a release from Borsare. Pl. Resp. SMF at ¶ 53; Pl. Dep. at 186-87. Plaintiff informed T-Mobile that she was trying to obtain a return-to-work authorization, but such a return-to-work authorization was being withheld by Borsare. Def. SMF at ¶ 54. Plaintiff contends that, as of January 23, 2013,

Borsare had not given her a release despite "repeated requests" from her that he do so. Pl. Resp. SMF at ¶ 54; Pl. Dep. at 185-87.

On January 22, 2013, after Plaintiff repeatedly promised and failed to provide a return-to-work authorization and release from Borsare, T-Mobile Human Resources Business Partner Georgia Vahoua sent an email to Plaintiff. Def. SMF at ¶ 55; Vahoua Dep. at 46-47, Ex. 22; Pl. Dep., Ex. 24. After detailing the history of Plaintiff's leave, including the fact that her FMLA leave had exhausted, and stating that T-Mobile had no information supporting her continuing absence from work, Vahoua explained to Plaintiff that she must take all steps necessary to return to work by January 25, 2013, and that if she failed to do so, she would be considered to have voluntarily terminated her employment. Def. SMF at ¶ 56; Vahoua Dep. at 46-47, Ex. 22; Plaintiff Dep., Ex. 24.

According to Defendant, while the Plaintiff contends that she requested that Borsare give her a return to work authorization, and contends that Borsare faxed that authorization to T-Mobile's Leave of Absence toll-free number on the afternoon of January 24, 2013, neither Plaintiff's managers, nor anyone involved in the administration of Plaintiff's leave, ever received such a fax. Def. SMF at ¶ 57; Benson Dep. at 20; Vahoua Dep. at 48-50; Graden Dep. at 24; Jackson Dep. at 36.

The toll-free number to which Borsare sent the fax does not connect directly to T-Mobile, but instead connects to a third-party administration service operated by a company known as AON. Def. SMF at ¶ 69; Benson Dep. at 16. In 2013, AON provided certain administrative services to T-Mobile, including receiving, and electronically filing in the appropriate electronic file T-Mobile return-to-work certifications. Def. SMF at ¶ 70; Benson Dep. at 16. While AON apparently received Borsare's fax, that company did not file it in Plaintiff's electronic leave file. Def. SMF at ¶ 71; Benson Dep. at 16, 20. As a faxed release was never filed in Plaintiff's benefit file by AON, and Plaintiff never provided a copy, no one at T-Mobile was aware that any such document existed. Def. SMF at ¶ 72; Benson Dep., at 20; Graden Dep. at 24; Vahoua Dep. at 48-50.

On January 25, 2013, Plaintiff appeared at work. Def. SMF at ¶ 58. Plaintiff did not bring a physical copy of her return to work authorization form. Def. SMF at ¶ 59. Although Plaintiff does not dispute that she did not bring a copy of the release form with her, she contends that she believed she "was not allowed to bring it in." Pl. Resp. SMF at ¶ 59; Pl. Dep. at 193-94. Jackson, Plaintiff's Manager, told her that she needed to contact T-Mobile's leave of absence team. Def. SMF at ¶ 60. When Plaintiff did so, she was informed that T-Mobile had not received any return-to-work authorization.

Def. SMF at ¶ 61. Plaintiff was again informed that she needed to obtain a copy of the release and bring it with her to work. Def. SMF at ¶ 62.

A few days after January 24, 2013, Plaintiff received a copy of a medical release from Borsare but never brought it to T-Mobile. Def. SMF at ¶ 65; Pl. Dep. at 208-09. After receiving repeated opportunities to obtain a return-to-work authorization and return to work, and receiving repeated extensions after failing to do so, Plaintiff's employment was terminated on January 25, 2013. Def. SMF at ¶ 66; Pl. Dep. at 203; Vahoua Dep. at 49; Graden Dep. at 23-24. Defendant contends that the individuals involved in the decision to terminate Plaintiff's employment, Graden and Vahoua, were not provided her leave or medical paperwork, and were not aware that Plaintiff alleged that she had PTSD. Def. SMF at ¶ 60; Benson Dep. at 22; Vahoua Dep. at 31; Graden Dep. at 28. Plaintiff disputes this and contends that Graden, Vahoua, and Jackson were aware that she suffered from a mental health condition related to the armed robbery, and was seeing a therapist. Pl. Resp. SMF at ¶ 61; Pl. Dep., Ex. 16, 19, 21.

Plaintiff's Statement of Facts

Plaintiff began her employment with T-Mobile as a part-time Retail Sales Associate on September 5, 2002 at the Griffin store. Pl. SMF at ¶ 1. Plaintiff became a full-time Retail Sales Associate at the Griffin store in approximately October of

2002. Pl. SMF at ¶ 2. Plaintiff later transferred to the Jonesboro Road location in McDonough in the customer management training program, and after that, she was promoted to Retail Assistant Manager at the Decatur location. Pl. SMF at ¶¶ 4-5. In approximately April of 2009, Plaintiff transferred to the new Mt. Zion location as a Retail Sales Leader. Pl. SMF at ¶ 6. Plaintiff was a Retail Sales Leader from April of 2009 through her termination in January of 2013. Pl. SMF at ¶ 7. Plaintiff's supervisor at the Mt. Zion location was Store Manager Jennifer Jackson. Pl. SMF at ¶ 8. Shortly before Plaintiff's termination, Carl Graden became the District Manager to whom she reported. Pl. SMF at ¶ 9.

During her employment with T-Mobile, Plaintiff suffered two armed robberies at work. Pl. SMF at ¶ 10. The second armed robbery occurred on October 8, 2012, at the Mt. Zion location. Pl. SMF at ¶ 11. The suspects entered the back office where Plaintiff was working, put a gun to her head, and demanded she open the safe. Pl. SMF at ¶ 12. Following the armed robbery, Plaintiff left the store, did not return, and took medical leave. Pl. SMF at ¶ 13.

On October 23, 2012, Plaintiff sought therapy with a Licensed Professional Counselor she found through T-Mobile's employee assistance program, Terrance Borsare. Pl. SMF at ¶ 14; Pl. Dep. at 92-93. According to Plaintiff, she was diagnosed with post-traumatic stress disorder ("PTSD") as a result of the armed robbery. Pl.

SMF at ¶ 15; Borsare Dep. at 24-25, 27, 31, Ex. 3; Pl. Dep., Ex. 12. Defendant, on the other hand, contends that Plaintiff "received no actual and reliable diagnosis of PTSD," because Borsare is not a medical doctor or a psychologist, and he testified that it is "rare" for him to work with alleged PTSD patients. Def. Resp. SMF at ¶ 15; Borsare Dep. at 25. According to Plaintiff, her symptoms included "intense psychological distress and reactivity on exposure to internal and external cues that symbolize or represent an aspect of the robbery, difficulty sleeping, hypervigilance, exaggerated startle response and persistent avoidance of stimuli associated with the robbery and a numbing of general responsiveness." Pl. SMF at ¶ 16; Borsare Dep. at 24-25, 27, 31-36, Ex. 3; Pl.'s Dep., Ex. 12, at 4-5.

While on a T-Mobile conference call right after the armed robbery, Plaintiff withdrew from the conversation because there was too much "chatter and conflict" and she began to panic. Pl. SMF at ¶ 17. When a counselor was brought in after the armed robbery, Plaintiff went to the Mt. Zion location but it was too much for her and the counselor recommended that they take a walk. Pl. SMF at ¶ 18. Even reading the police report at her deposition exactly three years after the armed robbery made Plaintiff nervous. Pl. SMF at ¶ 19. Plaintiff suffered nightmares, crying spells, anxiousness, and fear as a result of the armed robbery. Pl. SMF at ¶ 20. The fear suffered by Plaintiff would not go away and she would cry uncontrollably. Pl. SMF

at ¶ 21. Plaintiff also was dazed from time-to-time and lost her appetite as a result of the armed robbery. Pl. SMF at ¶ 22. Plaintiff was afraid to return to the location of the armed robbery, the Mt. Zion location. Pl. SMF at ¶ 23.

Plaintiff attended thirteen counseling sessions with Borsare between late October of 2012 and March of 2013. Pl. SMF at ¶ 24. During Plaintiff's FMLA leave, she mainly stayed home or stayed with her family in Concord, Georgia. Pl. SMF at ¶ 25. Plaintiff had no choice but to be alone because she lived alone, and drove because she had to. Pl. SMF at ¶¶ 26-27. During her FMLA leave, Plaintiff saw her friends one time, although she now sees her friends ten to fifteen times in a three-month period. Pl. SMF at ¶ 28.

According to Plaintiff, self-care is an important part of treatment for PTSD patients meant to help them get better. Pl. SMF at ¶ 29. Borsare described that self-care "means basically things that I can do to take care of myself to help my emotional recovery, help my physiological recovery, if there are physiological symptoms. There are certain things that I can do or that I need to create space to help me function in a healthy way. So, I mean, there are different components of self-care, depending on the situation. But typically it has to do with taking time for yourself, taking time for relaxation, managing stress, staying connected with the support

network, talking about your problems rather than internalizing them, things like that." Pl. SMF at ¶ 30; Borsare Dep. at 89-90.

Borsare encouraged Plaintiff to work out during her medical leave, and exercising was not out of the ordinary for someone who is suffering from PTSD. Pl. SMF at ¶ 31. Borsare does not expect that someone who is out of work for PTSD would do nothing but sit at home or come to therapy because "that is not going to work usually." Pl. SMF at ¶ 32; Borsare Dep. at 90-91. Borsare recommends that his patients spend time with their family and friends. Pl. SMF at ¶ 34. Plaintiff frequently walked in family-oriented parks because it was therapeutic for her, they "were very nice and serene," and Borsare advised her to "listen to things around you." Pl. SMF at ¶ 36; Pl. Dep. at 109-10. Plaintiff attended a football game with her boyfriend in October of 2013, but she had a panic attack and followed up with Borsare. Pl. SMF at ¶ 37.

According to Plaintiff, she continues to have symptoms of PTSD including nightmares, crying spells, and depression. Pl. SMF at ¶ 38; Pl. Dep. at 235-36, 244-45, 260-61. Defendant disputes that, and contends that the evidence in the record indicates that, as of early 2013, Plaintiff had "[n]o symptoms of PTSD." Def. Resp SMF at ¶ 38; Pl. Dep. at 232; Borsare Dep. at 52, Ex. 3, at 216-18. Plaintiff further contends that she did not seek counseling because when she lost her employment, she lost her

benefits, and then when she became re-employed she was in a lengthy training program. Pl. SMF at ¶ 39.

Plaintiff was an eligible employee who applied for and was granted medical leave for her PTSD under the Family and Medical Leave Act ("FMLA"). Pl. SMF at ¶ 40. On her Request for FMLA Leave of Absence form, Plaintiff stated that she was "unable to cope and properly function in work environment due to armed robbery experienced while working." Pl. SMF at ¶ 41. Plaintiff contends that, on November 26, 2012, she sent an email to Carl Graden, Jennifer Jackson, and Human Resources Business Partner Georgia Vahoua, requesting an accommodation for her PTSD. Pl. SMF at ¶ 42; Pl. Dep. at 126, 131, Ex. 16; Graden Dep. at 12, Ex. 6; Vahoua Dep. at 8. Specifically, Plaintiff requested that she be moved to a mall location that was more secure than the strip mall location to which she was currently assigned. Pl. SMF at ¶ 43; Pl. Dep., Ex. 16. While Defendant does not dispute that Plaintiff sent an email on November 26, 2012, it denies that she requested an "accommodation" and contends that there was "no medical reason" that Plaintiff could not return to work at the Mt. Zion location. Def. Resp. SMF at ¶ 43; Pl. Dep. at 146, 159.

On December 27, 2012, Plaintiff was asked to provide an official request for accommodation by January 6, 2012. Pl. SMF at ¶ 44. On December 31, Plaintiff spoke with Graden about her requested accommodations. Pl. SMF at ¶ 45. On or around

January 3, 2013, Borsare submitted an official request on Plaintiff's behalf, requesting that she be moved to a mall location with more security. Pl. SMF at ¶ 46. Plaintiff knew that to be accommodated she might not be able to retain her Retail Sales Leader position. Pl. SMF at ¶ 47.

Plaintiff admits that she did not return to work on January 1, 2013, but she contends that she did not return because she was requesting an accommodation and in the process of negotiating that accommodation. Pl. SMF at ¶ 48. Plaintiff further contends that she was told by T-Mobile that her leave was extend to January 11, 2013 by T-Mobile's Human Resources Department. Pl. SMF at ¶ 49; Pl. Dep., Ex. 19.

According to Plaintiff, on January 9, 2013, she emailed Vahoua, Jackson, and Graden and told them that she was willing to return to the Mt. Zion location temporarily until another accommodation could be made. Pl. SMF at ¶ 50; Pl. Dep. at 144, Ex. 19. Plaintiff contends that she told Vahoua, Jackson, and Graden that "I spoke with the counselor, Terry Borsare, that I am seeing as far as releasing me to return to work today (January 9). We are in agreement: If possible a new position within the company, a new location in a highly patrolled area (Lenox, Perimeter or Cumberland mall locations) or returning to the Mt. Zion location temporarily. If a statement is needed from him in order for me to return, please advise. The location's office hours are Monday through Thursday 8 am to 5 pm - Touch of Healing

Counseling Center (678) 688-3133." Pl. SMF at ¶ 51; Pl. Dep. at 144-46, 149-51, Ex. 19. Although Defendant admits that Plaintiff sent this email, it contends that there was no need for Plaintiff to return to Mt. Zion "temporarily," because after January 9, 2013, Plaintiff was able to work in her position at the Mt. Zion store. Def. Resp. SMF at ¶¶ 50-51; Pl. Dep. at 146, 159.

In response to Plaintiff's January 9 email, Jackson arranged a telephone call between Plaintiff, Jackson, and Graden for January 11, 2013. Pl. SMF at ¶ 52. During the January 11 teleconference, Jackson, Graden, and Plaintiff discussed her request for accommodation. Pl. SMF at ¶ 53. There were no full-time positions available at mall locations at that time. Pl. SMF at ¶ 54. Plaintiff was given three options: (1) transfer to a part-time position in the district, (2) return to Mt. Zion, or (3) resign. Pl. SMF at ¶ 55. Plaintiff contends that no specific location for the part-time position was discussed with her. Pl. SMF at ¶ 56; Pl. Dep. at 154-57. Defendant disputes that and contends that Graden offered Plaintiff a specific mall location. Def. Resp. SMF at ¶ 56; Graden Dep. at 17. Plaintiff, on the other hand, contends that she was never offered a transfer to a mall location by Graden. Pl. SMF at ¶ 57; Pl. Dep. at 154-57. After being presented with her options, Plaintiff told Jackson and Graden that she would return full-time to the Mt. Zion location. Pl. SMF at ¶ 58. Jackson

memorialized the January 11, 2013 teleconference in an email noting that Plaintiff would return to work on January 14, 2013. Pl. SMF at ¶ 59.

On January 14, 2013, when Plaintiff texted Jackson that she was going to see if her doctor could fax or email her release to return to work, but that if he could not she would pick it up and drop it off, Jackson responded "fax to Loa dept." Pl. SMF at ¶ 60; Pl. Dep. at 165-66, 173-74, Ex. 21, Bates No. LN000499. According to Plaintiff, she understood this to mean that the release needed to be faxed and that she was not allowed to bring it in. Pl. SMF at ¶ 61; Pl. Dep. at 193-94. Although Plaintiff contends that was her understanding, Defendant notes that Plaintiff also had express instructions in writing that she was required to bring a "physical copy" with her to work, which Plaintiff does not dispute. Def. Resp. SMF at ¶ 61; Pl. Dep., Ex. 15. T-Mobile's Leave of Absence policy does not require that an employee personally bring in his or her release to return to work. Pl. SMF at ¶ 62. Plaintiff also contends that faxing is the normal process by which an employee provides his or her release to return to work to T-Mobile. Pl. SMF at ¶ 63; Vahoua Dep. at 49.

Plaintiff contends that, when she contacted Borsare for her release on January 14, 2013, she learned that Borsare was out sick with the flu and might return the next day. Pl. SMF at ¶ 64; Pl. Dep. at 174-75, Ex. 21, Bates No. LN000500. Plaintiff sent Jackson a follow up text with this update. Pl. SMF at ¶ 65. On January 14, 2013,

Plaintiff also sent Jackson and Graden an email confirming that she had contacted Borsare for a release to return to work but that he was out sick with the flu. Pl. SMF at ¶ 66. On January 16, 2013, Plaintiff texted Jackson that Borsare was still out of the office. Pl. SMF at ¶ 67. On January 17, 2013, Plaintiff notified Jackson that Borsare would be in at 2 p.m. and Plaintiff requested a follow up phone call when the release to return to work was faxed to T-Mobile. Pl. SMF at ¶ 68.

Plaintiff contends that it was her expectation that Borsare would fax a release to return to work to T-Mobile's Leave of Absence Department so that she could return to work. Pl. SMF at ¶ 69. Defendant disputes that, and contends that both Plaintiff and Borsare testified that Plaintiff did not even ask Borsare to submit a release form until January 24, 2013, ten days after the date that Plaintiff had agreed to return to work. Def. Resp. SMF at ¶ 69; Pl. Dep. at 146-47; Borsare Dep. at 68, 97. Plaintiff, on the other hand, contends that Borsare actually prepared a release for her to return to work on January 17, 2013. Pl. SMF at ¶ 70; Borsare Dep. at 86-87, Ex. 2, at 103.

On January 18, 2013, Plaintiff notified Jackson that she had spoken with Borsare's office and that Borsare wanted to meet with her Monday, January 21, 2013 before he submitted the release. Pl. SMF at ¶ 71. Plaintiff met with Borsare on January 21, 2013 and he told her that he wanted to talk to Dr. Duffy with Standard, T-Mobile's short-term disability provider, before releasing her to work. Pl. SMF at ¶ 72. Plaintiff

notified Jackson of this and also told her that she had another appointment with Borsare on January 23, 2013. Pl. SMF at ¶ 73.

On January 22, 2013, Borsare told Plaintiff to contact Dr. Duffey and to let Borsare know if she still needed him to prepare the release to return to work. Pl. SMF at ¶ 75. Plaintiff contends that, when she attempted to contact Dr. Duffey, he would not speak with her and referred her back to Borsare for her release to return to work. Pl. SMF at ¶ 76. Plaintiff further contends that, as of January 23, 2013, Borsare had not given her a release to return to work despite repeated requests that he do so. Pl. SMF at ¶ 77; Pl. Dep. at 185-87. Defendant disputes that, and contends that Plaintiff did not even ask Borsare for a release until January 24, 2013. Def. SMF at ¶ 77.

According to Plaintiff, on January 24, 2013, Borsare faxed Plaintiff's release to return to work to Senior Leave of Absence Administrator Joanna Benson at T-Mobile's leave of absence fax number, and the fax was received by T-Mobile. Pl. SMF at ¶ 78; Pl. Dep. at 192-93, 208, Ex. 21, Bates No. LN000508; Borsare Dep. at 70-71, 75-76, 79-80, 89, Ex. 8, 10; Benson Dep. at 7. Defendant denies that the fax was ever received by anyone at T-Mobile. Def. Resp. SMF at ¶ 78; Benson Dep. at 16, 20; Vahoua Dep. at 48-50; Graden Dep. at 24. That same day, Plaintiff notified Jackson that the release had been faxed. Pl. SMF at ¶ 79. Plaintiff contends that T-Mobile's Leave of Absence Department received Plaintiff's release to return to

work but coded it to the wrong claim number. Pl. SMF at ¶ 80; Borsare Dep. at 89, Ex. 8, 10; Benson Dep. at 12-13. Defendant disputes that, and contends that nobody at T-Mobile was aware that the release existed. Def. Resp. SMF at ¶ 80; Benson Dep. at 20; Vahoua Dep. at 48-50; Graden Dep. at 24.

Plaintiff returned to work on Friday, January 25, 2013. Pl. SMF at ¶ 81. At that time, Plaintiff was told by the Leave of Absence Department that it had not received her release to return to work. Pl. SMF at ¶ 81. Plaintiff told the Leave of Absence Department that she could not get a copy of the release until Monday, January 28, 2013, because her Licensed Professional Counselor's office was closed until Monday. Pl. SMF at ¶ 82. Although Defendant admits that Plaintiff said that, it contends that Plaintiff's statement was not truthful because Borsare testified that Plaintiff could have easily obtained a copy of the release form had she left a message at his office. Def. Resp. SMF at ¶ 82; Borsare Dep. at 78. Plaintiff, on the other hand, contends that she did call Borsare's office but she was unable to reach anyone. Pl. SMF at ¶ 83; Pl. Dep. at 200-01. Defendant denies this and notes that Plaintiff's testimony was conflicting on that point; she first testified that she did not call and then stated that she "think[s]" she called. Def. Resp. SMF at ¶ 83; Pl. Dep. at 200-01.

According to Plaintiff, T-Mobile terminated her employment, rather than look for the release or allow Plaintiff until Monday to get a copy of the release from her

Licensed Professional Counselor. Pl. SMF at ¶ 84. Although Defendant admits that it terminated Plaintiff's employment, it denies that it received a release and denies that it did not look for her release. Def. Resp. SMF at ¶ 84; Pl. Dep. at 199-200; Benson Dep. at 16-20. Plaintiff contends that she made the decision to return to work at the Mt. Zion location as of January 11, 2013 when she was told that her accommodations were denied and her only other options were to take a part-time position or resign. Pl. SMF at ¶ 85; Pl. Dep. at 186-87. Defendant disputes that, and contends that Plaintiff did not even ask Borsare for a release until January 24, 2013, because she was still considering whether she wanted to return to work at T-Mobile. Def. Resp. SMF at ¶ 85; Pl. Dep. at 146-47; Borsare Dep. at 68, 97.

On June 18, 2013, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that T-Mobile discriminated against her because of her disability and failed to accommodate her disability. Pl. SMF at ¶ 86; Pl. Dep. at 212-13, Ex. 29. In the Complaint, Plaintiff alleges that she received a Notice of Right to Sue and timely filed this action within ninety days of receipt. Comp. [1] at ¶ 19.

## II.    DISCUSSION

### A.    SUMMARY JUDGMENT STANDARD

Summary judgment is authorized when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 175 (1970); *Bingham, Ltd. v. United States*, 724 F.2d 921, 924 (11th Cir. 1984). The movant carries this burden by showing the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In making its determination, the court must view the evidence and all factual inferences in the light most favorable to the nonmoving party.

Once the moving party has adequately supported its motion, the nonmoving party must come forward with specific facts that demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party is required "to go beyond the pleadings" and to present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Generally, "[t]he mere existence of

27

a scintilla of evidence" supporting the nonmoving party's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

When considering motions for summary judgment, the court does not make decisions as to the merits of disputed factual issues. *See Anderson*, 477 U.S. at 249; *Ryder Int'l Corp. v. First American Nat'l Bank*, 943 F.2d 1521, 1523 (11th Cir. 1991). Rather, the court only determines whether there are genuine issues of material fact to be tried. Applicable substantive law identifies those facts that are material and those that are irrelevant. *Anderson*, 477 U.S. at 248. Disputed facts that do not resolve or affect the outcome of a suit will not properly preclude the entry of summary judgment. *Id.*

If a fact is found to be material, the court must also consider the genuineness of the alleged factual dispute. *Id.* An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Id.* at 250. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 242. Moreover, for factual issues to be genuine, they must have a real basis in the record. *Matsushita*, 475 U.S. at 587. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586.

28

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587 (quoting *First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968)). Thus, the standard for summary judgment mirrors that for a directed verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 259.

B.     PLAINTIFF'S ADA CLAIMS

In the Complaint, Plaintiff asserts three separate claims under the ADA. In Count I, Plaintiff asserts a claim for a "failure to accommodate" under the ADA. Comp. [1] at ¶¶ 43-55. She claims that, under the ADA, she is a qualified individual with a disability, and that Defendant unlawfully denied her request for a reasonable accommodation for her disability. *Id.* In Count II, she asserts a separate claim under the ADA for "actual disability." *Id.* at ¶¶ 56-67. She claims that, under the ADA, she is a qualified individual with a disability, and that Defendant violated the ADA when it terminated her employment "because of her disability and in favor of a non-impaired, non-disabled person." *Id.* at ¶¶ 58-62. In Count III, she asserts a claim under the ADA for "retaliation." *Id.* at ¶¶ 68-78. She claims that she engaged in a protected activity under the ADA by requesting a reasonable accommodation for her disability,

and that Defendant retaliated against her by terminating her employment, in violation of the ADA. *Id.*

   1.   *Standards of Proof under the ADA*

The ADA was "designed to prohibit discrimination against disabled persons and enable those persons 'to compete in the workplace and the job market based on the same performance standards and requirements expected of persons who are not disabled.'" *Paleologos v. Rehab Consultants, Inc.*, 990 F. Supp. 1460, 1464 (N.D. Ga. 1998) (Carnes, J.) (*quoting Harding v. Winn-Dixie Stores, Inc.*, 907 F.Supp. 386, 389 (M.D. Fla. 1995)). Title I of the ADA prohibits covered employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *see also Wascura v. City of South Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001).

The definition of "discriminate" includes a failure to make reasonable accommodations to the limitations of that individual with a disability. 42 U.S.C. § 12112(b)(5)(A) ("the term 'discriminate against a qualified individual on the basis of disability' includes . . . not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability

30

who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity").

In general, the burden of proof for a claim of disability discrimination under the ADA is based on the framework established by the Supreme Court for Title VII employment discrimination cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Durley v. APAC, Inc.*, 236 F.3d 651, 657 (11th Cir. 2000) (*McDonnell Douglas* framework generally applies to disability discrimination claims under the ADA). For those cases in which an employee claims that an employer violated the ADA by failing to provide a reasonable accommodation for the employee's disability, however, the Eleventh Circuit has held that the *McDonnell Douglas Corp.* burden-shifting framework does not apply. *Nadler v. Harvey*, 2007 WL 2404705, at *9 (11th Cir. August 24, 2007) ("An employer *must* reasonably accommodate an otherwise qualified employee with a *known* disability unless the accommodation would impose an undue hardship in the operation of the business. . . . Thus, applying *McDonnell Douglas* to reasonable accommodation cases would be superfluous, since there is no need to prove discriminatory motivation.") (emphasis in original); *see also Holly v. Clairson Industries, L.L.C.*, 492 F.3d 1247, 1262 (11th Cir. 2007) (in an ADA failure to accommodate case, there are no additional burdens on defendant to show that it had

a legitimate nondiscriminatory reason for terminating plaintiff or on plaintiff to establish that defendant's proffered reasons were pretextual); *Jones v. Georgia Dep't of Corrections*, 2008 WL 779326, *6 (N.D. Ga. March 18, 2008) ("The Eleventh Circuit came to the logical conclusion that the *McDonnell Douglas* test does not apply to reasonable accommodation claims in [*Nadler*], but it inexplicably did not publish the opinion and provide trial courts with a clear answer to this previously unaddressed issue.").

To establish a *prima facie* case of disability-based discrimination under the ADA, a plaintiff must demonstrate that she: (1) has a disability as defined in the ADA, (2) is a "qualified individual," meaning that, with or without reasonable accommodations, she can perform the essential functions of the job she holds; and (3) was discriminated against because of her disability. *See Mazzeo v. Color Resolutions Int'l, LLC*, 746 F.3d 1264, 1268 (11th Cir. 2014) (citing *Holly*, 492 F.3d at 1256); *Greenberg v. BellSouth Telecommunications, Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007); *Witter v. Delta Air Lines, Inc.*, 138 F.3d 1366, 1369 (11th Cir.1998). In addition, a plaintiff must present evidence establishing that her employer had either actual or constructive knowledge of her alleged disability or considered her to be disabled. *See Gordon v. E.L. Hamm & Assoc., Inc.*, 100 F.3d 907, 910-911 (11th Cir. 1996); *Morisky v. Broward County*, 80 F.3d 445, 447-48 (11th Cir. 1996).

The first *prima facie* element requires a plaintiff to show that she has a disability as it is defined under the ADA. The relevant provision of the ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). In addition, the ADA Amendments Act of 2008 ("ADAAA") amended the ADA in 2008 to further provide that, for the purpose of establishing the existence of a "disability," "a major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." 42 U.S.C. § 12102(2)(B).[1]

### 2. *Plaintiff's Claims of Disability Discrimination*

After the Defendant filed its motion for summary judgment, Plaintiff filed a response brief, in which she states that "[a]t the close of discovery, Ms. Neal believes that she will not be able to establish that she was actually disabled under the ADA and therefore waives her ADA discrimination claim." Pl. Br. [46] at 3 n.1. Accordingly, Plaintiff has conceded that she does not have a disability under the ADA, and thus, she has abandoned her claims that Defendant T-Mobile discriminated against her on the

_____

[1] The ADA was amended by the ADAAA in 2008, and the amendments became effective on January 1, 2009. *See Dickey v. Dollar Gen. Corp.*, No. 08–15901, 2009 WL 3497733, *1 n.3 (11th Cir. Oct.30, 2009).

basis of her disability by failing to grant her request for accommodation (Count I), and by terminating her employment (Count II). *See White v. City of Lagrange, Ga.*, 952 F.Supp.2d 1353, 1357 (N.D. Ga. 2013) (Batten J.) (explaining that if, in response to a defendant's motion for summary judgment on a particular count, the plaintiff fails to present evidence or argument in support of that count, the Court may deem that claim abandoned), *aff'd*, 538 Fed. Appx. 892 (11th Cir. 2013).

Accordingly, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment [37] be **GRANTED** as to Plaintiff's ADA claims in Counts I and II of the Complaint, and that judgment be entered in favor of Defendant T-Mobile on those claims.

Plaintiff argues, however, that, although she concedes that she did not have a disability under the ADA, she can still establish a claim for unlawful retaliation under the ADA, as asserted in Count III of the Complaint. Pl. Br. [46] at 13.

3.   *Plaintiff's Claim of Retaliation under the ADA*

The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). The Eleventh Circuit has held that, because this provision creates a

prohibition on retaliation under the ADA that is similar to the prohibition on retaliation found in Title VII, courts should evaluate ADA retaliation claims under the same framework used for Title VII retaliation claims. *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997); *see also McNely v. Ocala Star–Banner Corp.*, 99 F.3d 1068, 1075–77 (11th Cir. 1996) (relying on Title VII jurisprudence to interpret meaning of ADA provisions in a retaliation case).

To establish a *prima facie* case of retaliation under the ADA, a plaintiff must show the same elements generally required for a claim of illegal retaliation under Title VII: (1) she engaged in statutorily protected expression, (2) she suffered an adverse employment action, and (3) there is some causal connection between the expression and the adverse employment action. *Stewart*, 117 F.3d at 1287. "An employment action is considered 'adverse' only if it results in some tangible, negative effect on the plaintiff's employment." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1261 (11th Cir. 2001). "Once a *prima facie* case is established, the burden then shifts to the defendant employer to come forward with legitimate non-discriminatory reasons for its actions that negate the inference of retaliation." *Stewart*, 117 F.3d at 1287. If the defendant meets that burden, the plaintiff must then present evidence demonstrating that the employer's proffered legitimate reasons are merely a "pretextual ruse

designed to mask retaliation." *Id.*; *see also Isenbergh v. Knight–Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 440 (11th Cir. 1996).

a.     Plaintiff's *Prima Facie* Case

The first *prima facie* element requires the Plaintiff to show that she engaged in a protected expression as it is defined under the ADA. Plaintiff contends that she engaged in a protected activity when she requested a transfer as a reasonable accommodation for her alleged disability. Plaintiff argues that she is not required to show that she has an actual disability under the ADA to establish this element. *See, e.g., Rhoads v. F.D.I.C.*, 257 F.3d 373, 391 (4th Cir. 2001) (a claim of retaliation under the ADA "does not require that the claimant be disabled"); *see also Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002) (a plaintiff need only show that she "had a good faith, reasonable belief that the employer was engaged in unlawful employment practices" in order to establish that a complaint was a protected activity under either the ADA or Title VII).

The second *prima facie* element requires Plaintiff to show that Defendant subjected her to an adverse employment action after she engaged in a protected activity. For an employment action to be considered an "adverse action" that triggers liability under Title VII or the ADA, the decision must result in a material alteration on the terms of employment. *See Davis v. Town of Lake Park*, 245 F.3d 1232, 1239

36

(11th Cir. 2001) (in the context of a Title VII claim, "Whatever the benchmark, it is clear that to support a claim under Title VII's anti-discrimination clause the employer's action must impact the 'terms, conditions, or privileges' of the plaintiff's job in a real and demonstrable way"). It is undisputed that T-Mobile terminated Plaintiff's employment on or about January 25, 2013, and that her termination was an adverse employment action under the ADA.

Finally, the third element of a *prima facie* case requires Plaintiff to present some evidence that there was a causal link between her protected activity and the adverse employment action. Plaintiff has shown that she requested an accommodation of a transfer to a different location on or around January 2, 2013, and that her employment was terminated less than one month later on January 25, 2013. She argues that the temporal proximity suggests a causal link. *See, e.g., Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) ("A plaintiff satisfies this element if she provides sufficient evidence of knowledge of the protected expression and that there was a close temporal proximity between this awareness and the adverse action.").

In the Defendant's brief in support of its motion for summary judgment, it does not argue that the Plaintiff has failed to establish a *prima facie* case of retaliation under the ADA. *See* Def. Br. at 22 ("even assuming that Neal can establish a *prima facie* case of retaliation for seeking reasonable accommodation under the ADA, she

cannot establish that T-Mobile's reasons for its actions were pretext for retaliation"). Accordingly, the Court will assume for the purpose of this discussion that the Plaintiff has presented sufficient evidence to establish a *prima facie* case of retaliation under the ADA. In order for the Defendant to establish that it is entitled to summary judgment on this claim, it must present evidence that it had a legitimate reason to terminate the Plaintiff's employment that was unrelated to her request for an accommodation under the ADA.

### b.    Defendant's Legitimate Reason

Defendant argues that it has presented sufficient evidence to establish that it had a legitimate reason to terminate the Plaintiff's employment that was unrelated to her request for an accommodation by transferring her to a position in a mall location. In sum, the Defendant contends that Plaintiff's employment was terminated because she failed to submit a medical release form upon her return to work after her FMLA leave expired, after she was expressly informed in writing that she was required to both fax a copy of the release to the leave of absence department and bring a copy of her release form to work with her.

It is undisputed that Plaintiff was granted FMLA leave commencing on October 9, 2012. Def. SMF at ¶ 10. It is further undisputed that, while Plaintiff was on FMLA leave, she was expressly informed in writing that she was "required to present a return

to work authorization release" from Borsare when she returned to work. Def. SMF at ¶ 47. In the letter, she was expressly instructed to not only fax the release to T-Mobile but also to "bring a physical copy to work on your first day back." Def. SMF at ¶ 47; Pl. Dep., Ex. 15 (letter to Plaintiff from Joanna Benson, Leave of Absence Administrator, dated December 21, 2012, stating that, upon her return to work after her FMLA leave, Plaintiff must present her release form three days prior to returning to work, and that she must "**fax the release to your LOA administrator**" and "**bring a physical copy to work on your first day back**") (emphasis in original). Significantly, Plaintiff does not dispute receiving that letter or being instructed to bring a copy of the release form to work with her. *See* Pl. Resp. SMF at ¶ 47.

Plaintiff did not return to her position at the end of her twelve weeks of FMLA leave, which expired on or about January 1, 2013. Def. SMF at ¶¶ 31-32. Instead, on or around January 2, 2013, Plaintiff asked T-Mobile to provide her a workplace accommodation by transferring her to a new position at a different location, preferably a mall location. Def. SMF at ¶¶ 33-34; Pl. Dep., Ex. 18. On January 11, 2013, during a phone call, Plaintiff was offered the option to return to the Mt. Zion store, or to take another available part-time position within District Manager Graden's area. Def. SMF at ¶ 40. Plaintiff stated that she wished to return to her Mt. Zion position, and that she would do so by the following Monday, January 14, 2013. Def. SMF at ¶ 42.

It is undisputed that Plaintiff did not obtain the medical authorization and release form before January 14, 2013. Def. SMF at ¶ 50; Pl. Dep. at 146-47. Plaintiff informed T-Mobile that she was trying to obtain a return-to-work authorization, but the authorization was being withheld by Borsare. Def. SMF at ¶ 54. On January 22, 2013, eight days after the Plaintiff was scheduled to return to work, Georgia Vahoua sent an email to Plaintiff informing her that she must take all steps necessary to return to work by January 25, 2013, and if she failed to do so, she would be considered to have voluntarily terminated her employment. Def. SMF at ¶¶ 55-56.

While Plaintiff contends that Borsare faxed that authorization to T-Mobile's Leave of Absence toll-free number on the afternoon of January 24, 2013, the Defendant has presented evidence that neither Plaintiff's managers, nor anyone involved in the administration of Plaintiff's leave, ever received a fax. Def. SMF at ¶ 57; Benson Dep. at 20; Vahoua Dep. at 48-50; Graden Dep. at 24; Jackson Dep. at 36. The next day, January 25, 2013, Plaintiff appeared at work, but failed to bring a physical copy of her return to work authorization form, as she had previously been instructed. Def. SMF at ¶¶ 58-59. Defendant contends that, after the Plaintiff had received repeated opportunities to obtain a return-to-work authorization and return to work, and receiving repeated extensions after failing to do so, Plaintiff's employment

was terminated on January 25, 2013. Def. SMF at ¶ 66; Pl. Dep. at 203; Vahoua Dep. at 49; Graden Dep. at 23-24.

In sum, the Court finds that the Defendant has presented a legitimate reason for its decision to terminate the Plaintiff's employment that was unrelated to her request for an accommodation. Thus, because the Defendant has met its burden of presenting a legitimate reason for its decision to terminate Plaintiff's employment, Plaintiff must present sufficient evidence of pretext in order to defeat the Defendant's Motion for Summary Judgment.

c.     Pretext

A plaintiff may carry her burden of showing that the employer's proffered reasons are pretextual by showing that they have no basis in fact, that they were not the true factors motivating the decision, or that the stated reasons were insufficient to motivate the decision. A plaintiff can either directly persuade the court that a discriminatory or retaliatory reason more likely motivated the employer or show indirectly that the employer's ultimate justification is not believable. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981); *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1522 (11th Cir. 1991). In other words, the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable factfinder

41

to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision. *Burdine*, 450 U.S. at 256; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973).

To demonstrate pretext, a plaintiff must cite to evidence that "reveal[s] 'such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence.'" *Vessels v. Atlanta Indep. School Sys.*, 408 F.3d 763, 771 (11th Cir. 2005) (quoting *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004)). "[T]o avoid summary judgment [the plaintiff] must introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination." *Brooks v. County Comm'n of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1228 (11th Cir. 1993)). "Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [a defendant] has offered extensive evidence of legitimate, non-discriminatory reasons for its actions." *Young v. General Foods Corp.*, 840 F.2d 825, 830 (11th Cir. 1988).

As discussed, the Defendant has submitted evidence that shows that the Plaintiff's employment was terminated because she failed to submit a medical release form after her FMLA leave expired. It is undisputed that, on or about December 21,

2012, approximately two weeks before her 12-week FMLA leave was scheduled to expire, the Plaintiff was expressly informed *in writing* that she was required to present a release form at least three days prior to returning to work, and that she was required to both fax a copy of the release to the leave of absence department and bring a copy of her release form to work with her. It is also undisputed that Plaintiff failed to return to work at the end of her FMLA leave, and failed to submit a medical release form at the end of her FMLA leave, which expired on or around January 1, 2013.

Although Plaintiff contends that T-Mobile "extended" her FMLA leave through January 11, 2013, her only evidentiary support for that assertion is an email that she herself authored. *See* Pl. Resp. SMF at ¶ 31; Pl. Dep. Ex. 19 (in an email to the "management team" dated January 9, 2013, Plaintiff claims that she spoke with someone from "T-Mobile HR" on January 4, and "the lady I spoke with" from HR told her that her FMLA leave was extended through January 11). But Plaintiff does not dispute that the 12-week time period authorized under the FMLA actually expired on or about January 1, 2013, nor does she dispute that she failed to return to work at that time and failed to submit a medical release form at that time. Furthermore, even after the Plaintiff informed T-Mobile that she would return to work at the Mt. Zion location on January 14, 2013, it is undisputed that she again failed to submit a release form on or before that date, although she admits that she was advised that a release

form was required to be submitted to T-Mobile at least three days before she returned to work, and that she was required to bring a physical copy with her.

In sum, the Defendant has presented evidence that Plaintiff failed to submit a medical release form at the time her FMLA leave expired, and Plaintiff has not submitted any evidence to dispute that she failed to do so. Thus, it is undisputed that she failed to submit a release form on or before January 1, 2013, the date her twelve weeks of FMLA leave expired, and she also failed to submit a release form on or before January 14, 2013, the date she had agreed to return to work at the Mt. Zion location. An employer does not violate the ADA by requiring an employee to submit a medical release upon the return to work, or by discharging an employee who fails to do so at the time the employer requested the release. *See Diaz v. Transatlantic Bank*, 367 F. App'x 93, 95-96 (11th Cir. 2010) (the district court properly granted summary judgment on a claim of retaliation under the ADA and the FMLA in favor of employer that terminated employee after she failed to obtain medical clearance to return to work at the end of her FMLA leave).

Plaintiff nevertheless argues that she has shown that T-Mobile's purported reason for terminating her employment is pretextual because, she argues, the reason is "false and, on its own, establishes that T-Mobile's excuse is pretext for retaliation." Pl. Br. at 21. In making that argument, Plaintiff focuses entirely on the dispute over

whether T-Mobile received the release form that Borsare faxed to T-Mobile's Leave of Absence toll-free number on January 24, 2013. Defendant has presented evidence that, when Borsare faxed the form, neither Plaintiff's managers, nor anyone involved in the administration of Plaintiff's leave, ever received, or were aware of, such a fax. Def. SMF at ¶ 57; Benson Dep. at 20; Vahoua Dep. at 48-50; Graden Dep. at 24; Jackson Dep. at 36. According to Defendant, AON, the third-party administration service, failed to file the form in Plaintiff's electronic leave file. Def. SMF at ¶ 71; Benson Dep. at 16, 20. As a faxed release was never filed in Plaintiff's benefit file by AON, and Plaintiff never provided a copy, no one at T-Mobile was aware that any such document existed. Def. SMF at ¶ 72; Benson Dep., at 20; Graden Dep. at 24; Vahoua Dep. at 48-50.

Plaintiff has not cited to any record evidence to dispute Defendant's contentions that Plaintiff's managers failed to receive that fax. She argues, however, that because AON was an agent of T-Mobile, AON's receipt of the fax should be "imputed" to T-Mobile, and thus, the Court should consider that T-Mobile actually received the fax. Even assuming that Plaintiff could show that such knowledge should be "imputed" to T-Mobile generally, however, it remains undisputed that the actual decisionmakers were not aware of that fax at the time they made the decision to terminate the Plaintiff's employment on or about January 25, 2013. More importantly, however,

45

Plaintiff cannot dispute the fact that her twelve weeks of FMLA leave expired on January 1, 2013, and Borsare did not even attempt to fax the release form to T-Mobile until January 24, 2013, more than three weeks later. Plaintiff contends that she repeatedly attempted to get Borsare to give her a release form during that time period, and Plaintiff and Borsare dispute the substance of those conversations about the release form. In essence, Plaintiff's claim is that it simply was not her fault that she failed to submit the release form by January 14, 2013. Plaintiff claims that it was Borsare's fault, and he disputes that, claiming that she had previously told him that she was not even sure she wanted to return to work at T-Mobile.

In any event, it does not matter why the Plaintiff failed to submit the release form on or before January 14, 2013, it only matters that she did. Plaintiff's failure to bring a copy of the release form with her to work on January 14, 2013, the day she agreed to return to work, was a legitimate basis for T-Mobile to terminate her employment at that time. Although T-Mobile gave Plaintiff more time, over one week, to bring the form into work, she still failed to do so. Plaintiff does not dispute that she failed to bring the form with her to work, despite the fact that she had been clearly advised in writing on or about December 21, 2012, that she was required to do so. She also does not dispute that the release form was not faxed to T-Mobile three days prior to her return to work, as she was also advised that she was required to do.

46

Thus, the Court concludes that Plaintiff has failed to present sufficient evidence of pretext. Even viewing all of the evidence in the lights most favorable to Plaintiff, the Court finds that she has failed to cite to sufficient evidence in the record showing that Defendant's reason for terminating Plaintiff's employment was false, or that the reason given was not the true reason for the Defendant's decision. Accordingly, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment [37] be **GRANTED** as to Plaintiff's claim of unlawful retaliation under the ADA in Count III of the Complaint, and that judgment be entered in favor of Defendant on that claim.

### C.    PLAINTIFF'S FMLA CLAIMS

In the Complaint, Plaintiff has asserted two separate claims against T-Mobile under the FMLA. In Count IV, Plaintiff assets a claim of "interference" in violation of the FMLA. Comp. [1] at ¶¶ 79-88. She alleges that, at the time of her termination, she was entitled to leave under the FMLA, and, at the expiration of her leave, Defendant terminated her employment rather than reinstate her. *Id.* at ¶¶ 81-83. She alleges that, by refusing to allow her to return to work, Defendant "interfered" with her rights under the FMLA. *Id.* at ¶ 84. In Count V, Plaintiff asserts a claim for "retaliation for exercise of FMLA rights." *Id.* at ¶¶ 89-95. She claims that, by refusing

to return her to work when her "physician" released her to return to work, T-Mobile retaliated against her for exercising her rights under the FMLA. *Id.* at ¶ 91.

>  1.  *Standards of Proof under the FMLA*

The FMLA provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). It is also "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). An employee alleging that her rights under the FMLA have been violated by an employer may assert two types of claims: interference claims, in which the employee asserts that her employer refused to provide her with the rights granted under the FMLA, and retaliation claims, in which the employee alleges that her employer retaliated against her for exercising her rights under the FMLA or for opposing any activity made unlawful under the FMLA. *Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1206 (11th Cir. 2001); *see also Drago v. Jenne*, 453 F.3d 1301, 1305-08 (11th Cir. 2006); *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1352 (11th Cir. 2000).

In order for an employee plaintiff to establish a claim based on alleged interference with her rights under the FMLA, "an employee need only demonstrate

by a preponderance of the evidence that he was entitled to the benefit denied." *Strickland*, 239 F.3d at 1206–07. An interference claim may be based on an employee's termination prior to the start of her FMLA leave, and the employee need not allege that her employer intended to deny the benefit, because "the employer's motives are irrelevant." *Id.* at 1208.

However, "the right to commence FMLA leave is not absolute, and . . . an employee can be dismissed, preventing her from exercising her right to commence FMLA leave, without thereby violating the FMLA, if the employee would have been dismissed regardless of any request for FMLA leave." *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1236 (11th Cir. 2010). In *Krutzig*, the court held that an employer was entitled to summary judgment on an FMLA interference claim because "unrebutted evidence that the decision maker was not aware, at the time of the decision to terminate [the employee], of her request to commence FMLA leave establishes as a matter of law that [the employee's] termination was for reasons other than her requested leave." *Id.*

### 2.    *Plaintiff's Interference Claim*

In this case, Plaintiff claims that, at the time of her termination, she was entitled to leave under the FMLA, and, at the expiration of her leave, Defendant terminated her employment rather than reinstate her. Comp. at ¶¶ 81-83. She alleges that, by

49

refusing to allow her to return to work, Defendant "interfered" with her rights under the FMLA. *Id.* at ¶ 84.

In the Plaintiff's response brief, she has failed to address this claim of interference under the FMLA. *See* Pl. Br. at 13-25 (arguing only that she has established her claim of retaliation under the FMLA); Def. Reply Br. [49] at 2 (noting that Plaintiff has not opposed summary judgment as to Count IV because "she recognizes that her undisputed failure to return at the end of her 12-week FMLA leave bars such a claim"). Accordingly, the undersigned finds that Plaintiff has abandoned her claim in Count IV that Defendant interfered with her exercise of her rights under the FMLA. *See White v. City of Lagrange, Ga.*, 952 F.Supp.2d 1353, 1357 (N.D. Ga. 2013) (Batten J.) (explaining that if, in response to a defendant's motion for summary judgment on a particular count, the plaintiff fails to present evidence or argument in support of that count, the Court may deem that claim abandoned), *aff'd*, 538 Fed. Appx. 892 (11th Cir. 2013).

Furthermore, it is undisputed that Plaintiff took FMLA leave from her job at T-Mobile from October 9, 2012, through January 11, 2013, a period longer than twelve weeks. Plaintiff has cited to no evidence in the record that T-Mobile interfered with her right to take FMLA leave. Thus, even if the Plaintiff had not abandoned her claim of interference, she cannot establish that T-Mobile interfered with her ability to take

FMLA leave. Accordingly, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment [37] be **GRANTED** as to Plaintiff's claim of interference under the FMLA in Count IV of the Complaint, and that judgment be entered in favor of Defendant on that claim.

          3.    *Plaintiff's Retaliation Claim*

In Count V, Plaintiff has also asserted a separate claim under the FMLA for "retaliation for exercise of FMLA rights." Comp. at ¶¶ 89-95. Plaintiff claims that, by refusing to return her to work when her "physician" released her to return to work, T-Mobile retaliated against her for exercising her rights under the FMLA. *Id.* at ¶ 91.

The FMLA provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). It is also "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). An employee alleging that his or her rights under the FMLA have been violated by an employer may assert two types of claims: interference claims, in which the employee asserts that her employer refused to provide her with the rights granted under the FMLA, and retaliation claims, in which the employee alleges that her employer retaliated against her for exercising her rights under the FMLA or for opposing any activity made

unlawful under the FMLA. *Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1206 (11th Cir. 2001); *see also Drago v. Jenne*, 453 F.3d 1301, 1305-08 (11th Cir. 2006); *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1352 (11th Cir. 2000).

In order to state a claim for retaliation, the employee must establish that her employer subjected her to an adverse employment action and intentionally intended to discriminate against her for having exercised her rights under the FMLA. *Strickland*, 239 F.3d at 1207 (*citing King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999)). Unlike a plaintiff asserting a claim of interference, a plaintiff bringing a retaliation claim under the FMLA faces the increased burden of showing that the adverse employment action was "motivated by an impermissible retaliatory or discriminatory animus." *Id.* In the absence of direct evidence, a claim that an employee has been retaliated against for attempting to exercise her rights under the FMLA is analyzed using the *McDonnell-Douglas* framework applied to Title VII retaliation claims. *Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 798 (11th Cir. 2000).

In order to establish a *prima facie* case of an FMLA violation, Plaintiff must demonstrate that: (1) she availed herself of a protected right under the FMLA; (2) she suffered an adverse employment action, and (3) there is a causal link between the

exercise of her rights under the FMLA and the adverse employment action. *Brungart*, 231 F.3d at 798; *Parris v. Miami Herald Pub. Co.*, 216 F.3d 1298, 1301 (11th Cir. 2000). If Plaintiff meets this burden, Defendant must come forward with a legitimate nondiscriminatory reason for its action. The burden then shifts back to Plaintiff to demonstrate that the asserted reason is pretextual. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

The Court finds that, for the reasons discussed above in connection with the Plaintiff's retaliation claim brought under the ADA, her claim of retaliation under the FMLA also fails. The undisputed evidence presented by the Defendant shows that the Plaintiff's employment was terminated because she failed to submit a medical release form when she returned to work at the end of her FMLA leave. The FMLA provides that an employer may require a medical release to allow an employee to return to work. "As a condition of restoration . . . , the employer may have a uniformly applied practice or policy that requires each such employee to receive certification from the health care provider of the employee that the employee is able to resume work." 29 U.S.C. § 2614(a)(4); *see also Diaz v. Transatlantic Bank*, 367 F. App'x 93, 95-96 (11th Cir. 2010) (the district court properly granted summary judgment on a claim of retaliation under the ADA and the FMLA in favor of employer that terminated

53

employee after she failed to obtain medical clearance to return to work at the end of her FMLA leave).

As discussed above in connection with the Plaintiff's ADA claim, the Court concludes that Plaintiff has failed to present sufficient evidence that the Defendant's reason for terminating her employment was a pretextual reason to disguise unlawful retaliation. Accordingly, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment [37] be **GRANTED** as to Plaintiff's claim of unlawful retaliation under the FMLA in Count V of the Complaint, and that judgment be entered in favor of Defendant on that claim.

## III.   RECOMMENDATION

For the above reasons, **IT IS RECOMMENDED** that Defendant's Motion for Summary Judgment [37] be **GRANTED**, and that judgment be entered in favor of Defendant on all of Plaintiff's claims.

As this is a Final Report and Recommendation, there is nothing further in this action pending before the undersigned. Accordingly, the Clerk is **DIRECTED** to terminate the reference of this matter to the undersigned.

**IT IS SO RECOMMENDED** this 1st day of August, 2016.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE